UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

RANDY GEORGE,

    Plaintiff,

v.

ROGER WALKER et al,

    Defendants.

Case No. 05-cv-4181-JPG

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

### I. Introduction

Randy George filed this action on September 19, 2005, claiming defendants violated his First Amendment rights when they fired and subsequently refused to rehire him because of his political affiliation. He named Julie Curry, Roger Walker, Shelton Frey, Becky Williams, and Richard Bard as defendants individually, "for the limited purpose of implementing equitable relief." He named these defendants in their official capacities as well. The remaining defendants have now moved for summary judgment (Doc. 30), arguing that George cannot establish a prima facie case of retaliation. In George's response to defendants' motion, he admits he has insufficient evidence to support his claim he was fired for political reasons, but argues sufficient direct circumstantial evidence exists to show that he was not rehired because of his political affiliation (Doc. 40). Defendants have replied to George's response (Doc. 41).

### II. Background

George began his employment with Illinois Department of Corrections (IDOC) as an Administrative Assistant I at the Tamms Correctional Center. On January 10, 2003, George was promoted to Business Administrator. He was to start on January 16, 2003, but never actually did

because the State instituted a hiring freeze on January 14, 2003.

On December 12, 2003, IDOC posted an announcement that Tamms would be filling the position of Business Administrator. George expressed his interest in the position, but did not receive the promotion – it went unfilled. On June 30, 2004, IDOC laid George off. After he was laid off, George learned that IDOC intended to fill the position. IDOC posted an announcement of the opening in August 2004, and filled the position on October 12, 2004.

## III. Analysis

### A. Standard on Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). In determining the existence of a genuine dispute of material fact, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396.

If the moving party meets its burden, the nonmoving party has the burden "to go beyond the pleadings and affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Borello v. Allison*, 446 F.3d 742, 748 (7th Cir. 2006) (internal quotation marks and citations omitted); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *Insolia v. Phillip Morris Inc.*, 216 F.3d 596 (7th Cir. 2000).

    B.    **First Amendment Retaliation**

To state a claim for First Amendment retaliation, a plaintiff "must present evidence that: (1) his speech was constitutionally protected, (2) he has suffered a deprivation likely to deter free speech, and (3) his speech was at least a motivating factor in the employer's action." *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

Defendants do not argue that George's political affiliation "is an appropriate requirement for the position involved," *Nelms v. Modisett*, 153 F.3d 815, 818 (7th Cir. 1998) (quoting *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 64 (1990)), and they cannot argue that party affiliation is not speech protected by the First Amendment. *Hall v. Babb*, 389 F.3d 758, 762 (7th Cir. 2004). Defendants also do not dispute that the failure to hire someone is likely to deter speech. The parties only dispute whether sufficient evidence of causation exists.

To establish the necessary causal link, George must show that his party affiliation was "a substantial or motivating factor" in the decision not to hire him for the positions for which he applied. *Massey*, 457 F.3d at 717. "A motivating factor does not amount to a but-for factor or to the only factor, but is rather a factor that motivated the defendant's actions." *Spiegla v. Hull*, 371 F.3d 928, 942 (7th Cir. 2004). Circumstantial proof of discriminatory animus such as timing and the disparate treatment of similarly situated employees can suffice; George is not required to come forward with "the so-called smoking gun." *Massey*, 457 F.3d at 716. If George makes out his prima facie case, the burden shifts to defendants to show that George would not have been

3

hired regardless of his political affiliation. *Id*. at 717. If defendants meet this burden, the burden shifts back to George to show that defendants' reasons were pretextual and that discriminatory animus was the real reason he was not rehired. *Id*.

A threshold consideration in *Rutan* cases is whether the defendants knew of the plaintiff's political affiliation. *Hall*, 389 F.3d at 762; *Nelms*, 153 F.3d at 819. If they were not, a plaintiff cannot survive summary judgment. *E.g., Wilkie v. Obourn*, No. 00-4293, 2002 WL 338401, at *5 (S.D. Ill. Jan. 7, 2002). Defendants contend they are entitled to summary judgment because George has no evidence that any defendant other than Frey knew he was a Republican. They believe Frey's knowledge is not relevant because Frey, like George, was a Republican, in addition to being friendly with George and telling George of the openings.

In response, George contends that his service as the Republican Circuit Clerk of Pulaski County and his service as the Chairman of the Pulaski County Republican Party are sufficient to give rise to an inference of knowledge. As noted in *Hall v. Babb*, the Seventh Circuit has "sometimes assumed that a person's holding of an arguably prominent party office could support a finding of common knowledge among decisionmakers, and sometimes [it has] not." 389 F.3d at 763 (comparing cases). In *Nelms*, for example, the Court held the fact that the plaintiff ran for an office as a Republican raised a question of material fact as to the defendants' knowledge. 153 F.3d at 819. Similarly, in *Garrett v. Barnes*, 961 F.2d 629, 632 (7th Cir. 1992), the Court held that plaintiff's public activities, i.e., his precinct captainship for the democratic party in his district, his membership in the Young Democrats, and his campaigning on behalf of the mayor of Gary, Indiana, were sufficient to raise an inference that the decisionmakers were aware of his political affiliation. On the other hand, in *Cusson-Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir. 1992), the Court found it unreasonable to infer that the defendants knew of plaintiff's

4

political affiliation because the plaintiff "did not provide any facts to support the conclusory statement that her political affiliation was well known – she [did] not say how her political affiliation became so well known or who knew her political affiliation."

Though the cases go both ways, recently, the Seventh Circuit has been willing to assume that holding an "arguably prominent" position should raise an inference of knowledge. Given George's political activities and the nature of his community, the Court will assume that defendants had knowledge of his political affiliation

That defendants knew of George's political affiliation is not, of course, sufficient to show causation here. George must show that his affiliation was a substantial or motivating factor in defendants' decision not to hire him for the Business Administrator position. Defendants contend that George cannot meet this burden.

In response, George points to a number of facts that he believes are sufficient to defeat defendants' motion. First, there is little question that he was qualified for the job – it would unquestionably have been his if not for the hiring freeze. George also thinks the timing of a number of events related to the Business Administrator position suggest something rotten in Tamms, if not IDOC. Among other things, George points to emails he exchanged with IDOC employees which evidence the need to fill the position. He offers deposition testimony that supports this need as well. George also finds it quite suspicious that he did not receive the position when he applied for it December 2003. Because he was the only person to apply for the position, the fact that IDOC did not fill the position, coupled with its demonstrated need to do so, strongly suggests to him that IDOC did not want him in the job. In George's mind, IDOC's post-layoff actions support his conclusions. Less than two months after he lost his job, IDOC posted the announcement of the job again. IDOC filled the position with a qualified individual

5

from outside the IDOC system.

In response, defendants note that the candidate who eventually filled the position got the job because of her qualifications and her status as a veteran. Assuming she and George were equally qualified for the job, under state and department policies defendants would have had to give the position to the veteran. Second, defendants note that George did not merit consideration as an internal candidate because he had been laid off.

Having reviewed the record, the Court finds that only the suspicious timing discussed above and George's qualifications support his prima facie case on causation. Upon further analysis, it is clear that the qualifications issue is a nonstarter. First, that George may have had superior qualifications would not, in itself, establish causation. *Hall*, 389 F.3d at 763-64. Importantly, the record does not support an inference that George was more qualified than the individual IDOC hired. Assuming that George and the applicant were similarly qualified, there is no dispute the applicant would have been hired as a result of her status as a veteran. Thus, the only circumstantial evidence of discriminatory animus is timing.

The Seventh Circuit has addressed the scope of reasonable inferences to be drawn from timing in a number of cases in a number of contexts. While the Court has not been completely consistent, recent cases go in one direction. The Court's earlier decisions in cases like *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994) ("Generally, a plaintiff may establish [a causal] link through evidence that the discharge took place on the heels of protected activity."), *Rabinovitz v. Pena*, 89 F.3d 482, 489 (7th Cir. 1996), and *McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 797 (7th Cir. 1997) (suggesting that a two- to three-day period between the protected activity and the adverse action is sufficient to establish causation as a matter of law), suggest that temporal succession is enough to meet the causation requirement for purposes of

summary judgment.

This position, of course, runs against one of the most common logical fallacies, *post hoc ergo propter hoc* – Latin for "after this, therefore because of this." For this reason, the Seventh Circuit has moved away from its broader statements in *Dey* and *McClendon*. Recently, the Court has said that "mere temporal proximity between the filing of the charge of discrimination and the action alleged to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a triable issue." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 643 (7th Cir. 2002); *see e.g., Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 895 (7th Cir. 2001) (finding a plaintiff "needs more than a coincidence of timing to create a reasonable inference of retaliation"); *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 630 (7th Cir. 2001) ("The timing of the action, without more, is insufficient to establish the protected activity as a motivating factor."); *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000) ("Speculation based on suspicious timing alone, however, does not support a reasonable inference of retaliation; instead, plaintiffs must produce facts which somehow tie the adverse decision to the plaintiffs' protected actions."); *Bermudez v. TRC Holdings, Inc.*, 138 F.3d 1176, 1179 (7th Cir. 1998) ("Timing may be an important clue to causation, . . . but does not eliminate the need to show causation."). Today, "temporal sequence analysis is not a magical formula which results in a finding of a discriminatory cause." *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 506 (7th Cir.2004) (quoting *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1034 (7th Cir.1999)). In addition to suspicious timing, "other circumstances must . . . be present which reasonably suggest that the two events are somehow related to one another." *Sauzek*, 202 F.3d at 918.

The Court agrees the circumstances discussed above suggest that certain individuals at

7

IDOC did not want George as the Business Administrator. This evidence shows bias, but unspecified bias by itself does not meet the causation requirement. To defeat defendants' motion, George must show that this bias was based on his political affiliation rather than some other source of prejudice. *Tarpley v. Jeffers*, 96 F.3d 921, 929 (7th Cir. 1996). While the circumstances of this case are sufficient "to raise some eyebrows," they are not sufficient to raise a jury question. *See id*. at 930. As the Court of Appeals noted in *Simmons v. Chicago Bd. of Educ.*, 289 F.3d 488, 495 (7th Cir. 2002), "In cases where plaintiffs have prevailed on political motivation claims, they have offered far more evidence than this, such as a pattern of decisions based on political factors, or direct testimony from someone other than the plaintiff that the defendant wanted to rid the division of a political opponent." George has not shown a pattern of political discrimination or produced direct testimony showing that the decisionmaker was looking to get rid of a political opponent.

Even if George had met his prima facie case, which he has not, defendants have put forth sufficient evidence to put the burden back on him to show pretext, which he also cannot do. George does not dispute that employees who are laid off are not considered internal employees for purposes of deference to internal rather than external candidates, nor does he dispute that if he and the applicant were equally qualified the applicant would have been hired anyway because she was a veteran. George's only evidence of pretext is that IDOC did not choose him for the Business Administrator position when he applied for it in December 2003. To accept this as relevant circumstantial evidence, the Court must assume that IDOC employees at various levels actively conspired over the course of eleven months to make sure the George did not fill the position. George admits that he does not have any evidence to suggest that the defendants were involved in the budget cuts that led to his termination. Accepting his theory necessarily requires

8

one to posit affirmative action on the part of the defendants not only to keep George from being promoted, but to make sure he was fired and not transferred internally so that he would not be on the eligibility list of internal employees.[1] While this theory is certainly one possible explanation for the events described herein, George has not provided the Court with sufficient information from which to accept this proposition reasonably.

## IV. Conclusion

Defendants' motion for summary judgment (Doc. 30) is **GRANTED**. This ruling makes defendants' motion to amend their reply (Doc. 47) **MOOT**. The Court hereby dismisses this case **WITH PREJUDICE.** The Court **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: July 25, 2007**

                                              s/ J. Phil Gilbert
                                             **J. PHIL GILBERT**
                                             **DISTRICT JUDGE**

---

[1] Under these circumstances, IDOC gives internal employees a leg up on external candidates.

9